# United States Court of Appeals

## For the First Circuit

No. 12-1647

KAREN RODRÍGUEZ-REYES ET AL.,

Plaintiffs, Appellants,

v.

CARLOS M. MOLINA-RODRÍGUEZ ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Selya and Lipez,
Circuit Judges.

Johanna M. Emmanuelli Huertas, with whom Pedro E. Ortiz Álvarez, LLC was on brief, for appellants.
Susana I. Peñagarícano-Brown, Assistant Solicitor General, with whom Luis R. Román-Negrón, Solicitor General, was on brief, for appellees.

March 22, 2013

**SELYA, Circuit Judge.** We confront today a script that has become all too familiar in Puerto Rico: employees of a government agency decry as political discrimination adverse employment actions taken in the wake of an election that produced a regime change. The court below ruled, among other things, that the complaint failed to state a claim for relief because it did not assert facts sufficient to establish a prima facie case of political discrimination.

The prima facie case is an evidentiary model, not a pleading standard. For this reason, the interaction between the prima facie case and the plausibility standard crafted by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), has created some confusion. We now resolve that confusion and hold that the prima facie case is not the appropriate benchmark for determining whether a complaint has crossed the plausibility threshold. Accordingly, that aspect of the district court's decision must be annulled and the case remanded for further proceedings.

I. BACKGROUND

We sketch the background, reserving salient details for our subsequent discussion of the merits. Inasmuch as this appeal follows the grant of a motion to dismiss, we glean the facts from the plaintiffs' complaint. See Marek v. Rhode Island, 702 F.3d 650, 651-52 (1st Cir. 2012).

The plaintiffs — Karen Rodríguez-Reyes, Carmen C. Rivera-Rosado, Maria Torres-Plaza, Liz Katiria Fuentes-Rodríguez, and Pilar Vega — are former employees of the Puerto Rico Administration of Juvenile Institutions (AIJ). See P.R. Laws Ann. tit. 8, §§ 551-562. The institutions that fall within the purview of the AIJ provide rehabilitative and educational services to detained minors. Id. § 555. Vega, a member of the Puerto Rico Independence Party, previously served as a teacher and a school director for the AIJ; the remaining plaintiffs, all members of the Popular Democratic Party (PDP), were teachers employed by the AIJ.

From 2001 through 2008, the PDP held the reins of power in Puerto Rico. The PDP lost the 2008 general election; its main rival, the New Progressive Party (NPP), assumed office and took control of the AIJ in January of 2009. At some point thereafter, the new administrators began to "talk about politics" and launched a "witch-hunt" designed to obtain information about employees' political affiliations.

At the earliest practical opportunity, the plaintiffs were ousted from their positions, notwithstanding solid qualifications and positive evaluations. Specifically, Vega was told in 2009 that her position would be eliminated and, although she was promised a more responsible post, that promise never materialized. Torres — who was on a career track as a teacher — was cashiered at the end of the 2009-2010 school year. The other

three plaintiffs were so-called "transitory" employees; none of them was asked back to fill her teaching post and no explanations were offered.  In every instance, a person affiliated with the NPP was hired as a replacement.

Appalled by these events, the plaintiffs sued Carlos M. Molina-Rodríguez, Secretary of the Puerto Rico Corrections and Rehabilitation Department (CRD) and Administrator of the AIJ (an agency within the CRD); Sonia Ríos, an AIJ hierarch; and two unidentified AIJ officials (sued as "John Doe" defendants), both of whom allegedly participated in the challenged personnel decisions.[1]  Their complaint invoked 42 U.S.C. § 1983 and alleged discrimination based on political affiliation in violation of the First Amendment.  They also lodged pendent claims under Puerto Rico law.  See P.R. Const. art. II, § 1; P.R. Laws Ann. tit. 31, §§ 5141, 5142.[2]  Both named defendants filed motions to dismiss.  The plaintiffs opposed these motions, but the court granted them, dismissing with prejudice all federal claims against all defendants.  See Rodríguez-Reyes v. Molina-Rodríguez, 851 F. Supp. 2d 375, 383

---

[1] The plaintiffs sued Molina, in his official capacity, for injunctive relief.  They sued all of the defendants in their individual capacities for money damages.

[2] Two of the plaintiffs added language that the district court interpreted as embedded claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623.  The district court dismissed these embedded claims for failure to exhaust administrative remedies.  Rodríguez-Reyes v. Molina-Rodríguez, 851 F. Supp. 2d 375, 383 (D.P.R. 2012).  No attempt is made on appeal to resurrect these age discrimination claims.

(D.P.R. 2012). The court then declined to exercise supplemental jurisdiction over the pendent claims and dismissed them without prejudice. See id.; see also 28 U.S.C. § 1367(c). This timely appeal followed.

**II. ANALYSIS**

We review de novo a district court's disposition of a motion to dismiss for failure to state a claim. Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011). In conducting this appraisal, "we accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Id. "We may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

We start our analysis with the shibboleth that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action. See Iqbal, 556 U.S. at 678-79; Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012). Rather, it "must contain sufficient factual matter to state a claim to relief that

is plausible on its face." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012).

A plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 556).

To this end, an inquiry into plausibility necessitates a two-step pavane. See Grajales, 682 F.3d at 45. First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited). See Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief. Id. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

In this case, the district court tested the complaint in a crucible hotter than the plausibility standard demands. It repeatedly faulted the complaint for failing to "establish a prima facie case of political discrimination." Rodríguez-Reyes, 851 F.

Supp. 2d at 381-82.  The plaintiffs argue that this laser-like focus on a prima facie case is misplaced at the pleading stage; that requirement, they say, should be reserved for summary judgment and trial.  We agree.

In <u>Swierkiewicz</u> v. <u>Sorema</u>, 534 U.S. 506 (2002), the Supreme Court negated any need to plead a prima facie case in the discrimination context and emphasized that the prima facie model is an evidentiary, not a pleading, standard.  <u>Id.</u> at 510, 512; <u>cf.</u> <u>Leatherman</u> v. <u>Tarrant Cnty. Narcotics Intell. & Coord. Unit</u>, 507 U.S. 163, 168 (1993) (rejecting heightened pleading standard for section 1983 cases).  Three years later, we confirmed the applicability of <u>Swierkiewicz</u> to political discrimination cases. <u>See</u> <u>Educadores Puertorriqueños en Acción</u> v. <u>Hernández</u>, 367 F.3d 61, 66 n.1 (1st Cir. 2004).

We recognize that these cases were decided before the Supreme Court effected a sea change in the law of federal pleading in <u>Iqbal</u> and <u>Twombly</u>.  This gives rise to two questions.  First, does the hegemony of the <u>Swierkiewicz</u>/<u>Leatherman</u>/<u>Educadores</u> line of cases continue in a post-<u>Iqbal</u>/<u>Twombly</u> world?  Second, what is the role, if any, of the prima facie case in determining plausibility at the pleading stage?

We answer the first question in the affirmative: the Swierkiewicz holding remains good law.[3] It is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage. See Swierkiewicz, 534 U.S. at 512. This conclusion is bolstered by the fact that the Twombly Court, which first authoritatively articulated the plausibility standard, cited Swierkiewicz with approval. See Twombly, 550 U.S. at 569-70 (discussing how the new pleading standard does not "run[] counter to" Swierkiewicz).

Iqbal does not mention, but is wholly consistent with, Swierkiewicz; there, the Court stressed that, notwithstanding the neoteric plausibility standard, no "detailed factual allegations" are required in a complaint. Iqbal, 556 U.S. at 677-78 (internal quotation marks omitted). The prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint.

In answering the first question, we do not write on a pristine page. Several other courts of appeals have considered the question and concluded, as we do, that the Swierkiewicz Court's treatment of the prima facie case in the pleading context remains

---

[3] Our reference is to the Swierkiewicz Court's discussion of the disconnect between the prima facie case and the rules of pleading. To the extent that the Swierkiewicz Court relied on Conley v. Gibson, 355 U.S. 41 (1957), to describe the pleading standard, that description is no longer viable. See Twombly, 550 U.S. at 562-63 (abrogating Conley).

the beacon by which we must steer.  See, e.g., Keys v. Humana, Inc., 684 F.3d 605, 609-10 (6th Cir. 2012); Khalik v. United Air Lines, 671 F.3d 1188, 1191-92 (10th Cir. 2012); Coleman v. Md. Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010); Arista Records LLC v. Doe 3, 604 F.3d 110, 120-21 (2d Cir. 2010); al-Kidd v. Ashcroft, 580 F.3d 949, 974 (9th Cir. 2009), rev'd on other grounds, 131 S. Ct. 2074 (2011).

This brings us to the second question.  With respect to this question, we do not mean to imply that the elements of the prima facie case are irrelevant to a plausibility determination in a discrimination suit.  They are not.  Those elements are part of the background against which a plausibility determination should be made.  See, e.g., Grajales, 682 F.3d at 46; Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011).  This approach is fully consistent with Swierkiewicz's dictates, and none of our post-Swierkiewicz cases have required the pleading of specific facts sufficient to establish each and every element of a prima facie case.

In a nutshell, the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim. Although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial — in a discrimination case, the prima facie

-9-

standard — she need not plead facts sufficient to establish a prima facie case.

Having constructed this foundation, we turn to the order of dismissal. In so doing, we limn the elements of a prima facie political discrimination case as a backdrop against which we must decide the plausibility of the claim.

Section 1983 is the conventional vehicle through which relief is sought for claims of political discrimination by state actors. For this purpose, Puerto Rico is the functional equivalent of a state. See Grajales, 682 F.3d at 46. "There are two essential elements of an action under section 1983: (i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." Martínez v. Colón, 54 F.3d 980, 984 (1st Cir. 1995) (internal quotation marks omitted). Within this rubric, a claim of political discrimination entails four showings: "that the protagonists are members of opposing political parties; that the defendant knows of the plaintiff's political affiliation; that an adverse employment action occurred; and that political affiliation was a substantial or motivating factor behind the adverse action." Grajales, 682 F.3d at 46.

With this architecture in place, we first examine the district court's conclusion that the complaint failed adequately to establish that Molina (the de facto head of the agency) was aware

of the plaintiffs' affiliations with opposing political parties. Rodríguez-Reyes, 851 F. Supp. 2d at 381. To be sure, the complaint contains only a conclusory statement of Molina's knowledge. For pleading purposes, however, knowledge may be inferable from other allegations in the complaint. See Grajales, 682 F.3d at 47. So it is here.

For one thing, the complaint alleges that the defendants, including Molina, "engaged in a witch-hunt scheme to obtain information as to the affiliation of each employee [of the AIJ] in order to dismiss those who were not affiliated with the NPP." For another thing, after the NPP took control of the agency, the new leaders began to "talk about politics." The district court believed that these assertions were immaterial because they did not represent "discrete factual events." Rodríguez-Reyes, 851 F. Supp. 2d at 381 (internal quotation marks omitted). We think that the district court subjected the complaint to an overly stringent pleading standard. An assertion that a defendant was affirmatively seeking information about employees' political affiliations is more than a bare legal conclusion. The plaintiffs' "witch-hunt" and "talk[ing] about politics" averments, though general, are factual assertions that must, at the pleading stage, be given credence. See, e.g., Ocasio-Hernández, 640 F.3d at 15 (holding similar allegations to be factual, not conclusory).

These statements anent the political atmosphere at the AIJ and the frenzy to discover the political affiliations of agency employees, when viewed in the light most flattering to the plaintiffs' theory of the case, are adequate to ground a plausible finding of Molina's knowledge. Indeed, it would be struthious to assume that Molina did not acquire the information about the plaintiffs' political leanings that he and other agency leaders actively sought — information that seemed generally available due to the AIJ's politically charged atmosphere.

The relevant question for a district court in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether "the complaint warrant[s] dismissal because it failed in toto to render plaintiffs' entitlement to relief plausible." Twombly, 550 U.S. at 569 n.14. There need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action. What counts is the "cumulative effect of the [complaint's] factual allegations." Ocasio-Hernández, 640 F.3d at 14. Here, the factual allegations, taken in their entirety, plausibly support a finding that Molina had acquired knowledge of the plaintiffs' political affiliations.

The district court also held that the plaintiffs had failed plausibly to allege Ríos's antagonistic political affiliation. Rodríguez-Reyes, 851 F. Supp. 2d at 382. The

complaint does state, however, that the "[p]laintiffs belong to political parties that espouse philosophies and ideas different to those of the defendants" (including Ríos) and characterizes Ríos as a high-ranking official in the revamped (NPP-appointed) AIJ administration. A high degree of factual specificity is not required at the pleading stage. See Twombly, 550 U.S. at 569 n.14. Thus, to survive a Rule 12(b)(6) motion, it is not necessary for a plaintiff in a political discrimination case to bring forth evidence that the defendant is a card-carrying member of the opposition party. On this issue, the plaintiffs' factual allegations are adequate for pleading purposes.

Our precedents illustrate this point. In an earlier case, we upheld for pleading purposes the sufficiency of an allegation "that the defendants all belong to the NPP." Ocasio-Hernández, 640 F.3d at 13 (alterations and internal quotation marks omitted). In another case, we upheld for pleading purposes the sufficiency of an allegation that each of the defendants "belong[s] to a different [political] party than [the plaintiff]." Grajales, 682 F.3d at 47 (alterations in original and internal quotation marks omitted). The allegations here are analogous and, therefore, they plausibly allege Ríos's antagonistic political affiliation.

The last pillar on which the district court's order rests involves what it concluded was the absence of any plausible allegation that political affiliation was a substantial or

motivating factor behind the adverse employment actions. Rodríguez-Reyes, 851 F. Supp. 2d at 382. Once again, it is important to bear in mind that the plaintiffs, for pleading purposes, need not <u>establish</u> this element; the facts contained in the complaint need only show that the claim of causation is plausible. Direct evidence of political animus is not a sine qua non. See Grajales, 682 F.3d at 49 (explaining that "'[s]moking gun' proof of discrimination is rarely available, especially at the pleading stage").

In this instance, the plaintiffs' complaint noted that "[o]nce the new administration arrived, its officers . . . made expressions as to the fact that there would be NPP's very upset if [the plaintiffs'] contracts would be renewed." This allegation forms a part of the plausible basis for a finding as to the cause of the ensuing adverse employment actions. In an environment in which leaders of the AIJ were voicing a need to shed nonpolicymaking employees who did not share their particular political persuasion, it surely is plausible that the plaintiffs' political affiliations became a substantial or motivating factor behind their loss of employment.

For pleading purposes, circumstantial evidence often suffices to clarify "a protean issue such as an actor's motive or intent." Anthony v. Sundlun, 952 F.2d 603, 605 (1st Cir. 1991). The complaint here contains allegations that all of the plaintiffs

were affiliated with political parties that opposed the NPP; that none of them ever received a negative evaluation for her work at the AIJ; that each was replaced by an NPP adherent; and that the critical decisions were made by newly appointed officials loyal to the NPP and in a politically charged atmosphere. The record contains no nondiscriminatory explanation for the adverse employment actions.

The time line is also suggestive. While the defendants argue that there is no temporal proximity between the regime change and the adverse employment actions — the NPP assumed control of the AIJ in the winter of 2009 and most of the plaintiffs had contracts to work through the 2009-2010 school year — this argument overlooks the nature of the contracts at issue. Teachers' contracts presumably run from school year to school year. While it seems likely that the 2009-2010 contracts were renewed sometime after the NPP administration took office, one could infer that this renewal occurred early in the administration. The NPP officials may have had insufficient time and information to head off renewing the 2009-2010 contracts, and their earliest practical opportunity to oust most of the plaintiffs may have been for the 2010-2011 school year.[4]

---

[4] Two of the plaintiffs present unique circumstances, but these circumstances are not material to our analysis. Fuentes alleges that she was not called back for the 2011-2012 school year; but her employment at the AIJ was not continuous — she worked from 2006-2008 and then from 2009-2010 — and it is plausible that the

The fact that the new NPP administration had to bide its time before this opportunity arose may account for the longer interval. At a minimum, such an inference is consistent with the plausibility analysis. See Iqbal, 556 U.S. at 679.

When all is said and done, we think that the array of circumstances described in the complaint suffices to support an inference of political animus. Indeed, we previously have found similar compendia of allegations adequate to make out plausible claims of political animus. See, e.g., Grajales, 682 F.3d at 49-50; Ocasio-Hernández, 640 F.3d at 17-18. The case at hand is cut from the same cloth: the combination of the politically charged questioning of the AIJ workforce, the statements of officials indicating an intent not to renew the contracts of persons affiliated with other political parties, the absence of any nondiscriminatory explanation for the adverse employment actions, the temporal proximity of the regime change to the adverse employment actions, and the replacement of the separated workers with NPP adherents permits a plausible inference, at the pleading

---

2011-2012 school year was the earliest practical opportunity to cashier her. Vega alleges that her position was eliminated in 2009 and that she was not called back after that date. Her termination does not implicate the complications wrought by annual contracts and her showing of close temporal proximity is compelling.

stage, that political animus was a substantial or motivating factor behind the adverse employment actions.[5]

There is one loose end. The complaint also attempts to set forth claims against two unidentified "John Doe" defendants. The district court dismissed these claims. Rodríguez-Reyes, 851 F. Supp. 2d at 382-83.

Although the plaintiffs cast a few aspersions in this direction, their appellate brief contains no developed argumentation about the sufficiency of these claims. The claims are, therefore, waived.[6] See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Consequently, we affirm this aspect of the judgment below.

---

[5] Our decision in Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592 (1st Cir. 2011), loudly bruited by the defendants, is not to the contrary. In that case, we found the plaintiff's allegations vis-à-vis the governor of Puerto Rico and two of his adjutants lacking plausibility, as the complaint did not specifically connect these defendants with the adverse employment action: the plaintiff's complaint relied solely on the notion that the defendants' positions afforded them the authority to make personnel decisions and, therefore, the defendants' putative liability rested on mere speculation that they were actually involved in the firing of the plaintiff. Id. at 596. The complaint in this case does not suffer from a comparable infirmity.

[6] At any rate, a plaintiff may prosecute a section 1983 claim against an unidentified party only if she can show that "a good-faith investigation has failed to reveal the identity of the relevant defendant and there is a reasonable likelihood that discovery will provide that information." Martínez-Rivera v. Sánchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007). The plaintiffs have not alleged facts plausibly showing compliance with these prerequisites.

### III. CONCLUSION

We need go no further. We hold that the factual allegations in the plaintiffs' complaint, taken as true, state plausible section 1983 claims for political discrimination with respect to Molina (in both his official and personal capacities) and Ríos. We likewise hold that the pendent claims against Molina and Ríos, which were dismissed without prejudice when the district court declined to exercise supplemental jurisdiction, must be reinstated. In these respects, we reverse the judgment below. We take no view as to whether the plaintiffs' evidence, when presented, will prove sufficient either to withstand summary judgment or to support a favorable jury verdict.

As to all claims asserted against the unidentified defendants, the judgment is affirmed.

**Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Costs shall be taxed in favor of the plaintiffs.**